1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7           FOR THE DISTRICT OF ARIZONA
8
9   Kerry Allyn Chase,                    )    No. CV-08-402-PHX-GMS (LOA)
                                          )
10           Petitioner,                  )    **REPORT AND RECOMMENDATION**
                                          )
11  vs.                                   )
                                          )
12  David Rivas, et al.                   )
                                          )
13           Respondents.                 )
                                          )
14  _____      )

15          On February 28, 2008, Petitioner filed a Petition for Writ of Habeas Corpus by

16  Person in State Custody Pursuant to 28 U.S.C. § 2254 challenging his conviction and

17  sentence in Arizona Superior Court Case Number CR2003-34552.  (docket # 1)  Petitioner

18  subsequently filed a Supplemental Brief in Support of Petition for Habeas Corpus, docket #

19  14, expanding his claims.   Respondents filed an Answer, but did not address all of the

20  claims in the Supplemental Brief.  (docket # 15)  The Court, therefore, directed Respondents

21  to file a supplemental answer and advised Petitioner that he could file a reply on or before

22  November 30, 2008.  (docket # 18)  Respondents filed a Supplemental Answer, docket # 21,

23  but Petitioner has not filed a reply.

24  **I. Factual and Procedural Background**

25          **A.  Factual Background, Charges, Trial and Sentence**

26          On June 4, 2003, the State of Arizona filed an indictment in CR2003-34552 in the

27  Arizona Superior Court, Maricopa County, charging Petitioner with three counts of

28  molestation of a child, class 2 felonies and dangerous crimes against children (Counts 1, 2,

and 3); one count of sexual conduct with a minor, a class 2 felony and dangerous crime against children (Count 4); one count of sexual abuse, a class 3 felony and dangerous crime against children (Count 5); and one count of furnishing obscene or harmful items to minors, a class 4 felony (Count 6). (Respondents' Exh. E[1])  At Petitioner's initial appearance on October 23, 2003, the court appointed Petitioner counsel from the Maricopa County Public Defender's Office. (Respondents' Exh. F)  Thereafter, Petitioner's appointed counsel, Michelle Lawson, filed a motion for temporary removal of official court files, transcripts, or exhibits which the court granted. (Respondents' Exhs. G, H)  Lawson also filed a motion for extension of time to challenge grand jury proceedings, which the trial court granted. (Respondents' Exh. I)

At a December 19, 2003 pretrial conference,[2] Petitioner filed a *pro se* motion to waive his right to counsel. (Respondents' Exhs. L, M)  The court addressed Petitioner's motion during the conference. (Respondents' Exhs. B, EE[3])  Petitioner informed that court that he wanted to waive his right to counsel and represent himself.  The trial court advised Petitioner of the rights he was waiving, warned him of the dangers and disadvantages of representing himself, and conducted a waiver of counsel colloquy. (Respondents' Exh. EE at 9-36)  The court inquired whether Petitioner had consumed any alcohol or medicine with the past 24 hours. (Respondents' Exh. EE at 7)  Petitioner advised the court that he had taken 20 milligrams of Prozac the day before pursuant to a prescription. (Respondents' Exh. EE at 7)  He assured the court that nothing, including that medication, was making him confused or making it difficult for him to think clearly. (Respondents' Exh. EE at 7)  The

---

[1] Respondents' Exhibits A-DD are attached to Respondents' Answer to Petition for Writ of Habeas Corpus, docket # 15.  Respondents' Exhibits EE-GG are attached to Respondents' Supplemental Answer to Petitioner's Supplemental Brief, docket # 21.

[2] The Honorable Mark F. Aceto presided.

[3] The transcript of the 12/19/2003 pretrial hearing attached to Respondents' initial Answer, docket # 15, as Exhibit B did not include pages 6, 7, and 28 of the transcript.  Respondents submitted a complete copy of the 12/19/2003 hearing as part of Respondents' Supplemental Exhibit EE, attached to docket # 21.

1   court then advised Petitioner of the potential sentences he faced.  (Respondents' Exh. EE)

2   The court also informed Petitioner that if he represented himself, he would "be held to the

3   same standard as an attorney regarding the presentation of his case."  (Respondents' Exh. EE

4   at 17)  The court explained that this standard includes knowledge of "courtroom procedures,

5   applicable case law, and rules of evidence and rules of criminal procedure."  (Respondents'

6   Exh. EE at 17-18)  Petitioner indicated that he understood those "matters," and had studied

7   "the Rule," including the Rules of Criminal Procedure, while in custody during the last two

8   years.  (Respondents' Exh. EE at 18-19)  Petitioner stated:

9           Your honor, I am aware of the dangers.  I feel that there's a lot
            of issues that weren't previously addressed by counsel that was
10          appointed.

11          I feel that I need to take control.  Previous counsel that had stated
            to me that they would control the direction of the case, regardless
12          of my wishes.  And for that reason, your Honor, I'm requesting
            to represent myself.  However, I would like to retain [advisory
13          counsel].

14   (Respondents' Exh. EE at 8-9)  After a lengthy discussion, the court granted Petitioner's

15   motion to represent himself and appointed his then-counsel, Toby Schmich, as advisory

16   counsel.  (Respondents' Exhs. EE at 21, M, N)  Petitioner informed the court that he did not

17   want Ms. Schmich as advisory counsel because of "irreconcilable differences" between them

18   as a result of an argument they had had during a conference the day before.  (Respondents'

19   Exh. Ee at 21-22)   Petitioner explained that Ms. Schmich had made comments to Petitioner

20   regarding the court's likely rulings, and Petitioner did not think "she had the authority to

21   make those comments to [Petitioner] since she didn't have the authority to make decisions

22   on [the court's] behalf."  (Respondents' Exh. EE at 22-23)   After being assured by Ms.

23   Schmich that she could serve as advisory counsel, the court denied Petitioner's request for

24   new advisory counsel.  (Respondents' Exh. EE at 25)

25          On January 26, 2004, Petitioner filed a Motion to Suppress Evidence based on the

26   prosecution's failure to provide disclosure.  Petitioner argued that the alleged lack of

27   disclosure hindered his ability to determine whether to accept the State's plea offer.

28   (Respondents' Exh. FF)  Petitioner claimed that "when the prosecution made the offer Dec.

1   17, 2003, via letter (Exhibit # 1), and pursuant to paragraph 2 line 2 of said letter 'plea

2   agreement is on absolute deadline,' the prosecution impacted Defendant's constitutional

3   rights.  Defendant could not, nor can he, make a knowingly (sic) and intelligent decision or

4   an informed decision, as to plea offer."  (Respondents' Exh. FF at 3)

5          In its responsive pleading, the State noted that Petitioner "has failed to demonstrate in

6   his motion that he considered the State's offer in this case and his consideration was

7   impacted by the lack of any disclosure.  Indeed the [Petitioner] has not indicated any desire

8   for a plea offer during any hearings or in any motions submitted to this court; rather he has

9   only expressed a desire to proceed to trial."  (Respondents' Exh. GG at 2)   However, in this

10  same pleading, the State agreed to "extend the plea offer dated December 17, 2003 another

11  30 days from February 6, 2004 until March 5, 2004."  (Respondents' Exh. GG at 3)

12         On June 30, 2004, the parties and the court engaged in settlement negotiations.

13  (Respondents' Exhs. C, O, P)  Petitioner represented himself at the June 30, 2004

14  proceeding and advisory counsel, William Peterson, was present.  (Respondents' Exh. C)

15  The trial court engaged in a lengthy plea colloquy with Petitioner.  The court asked if

16  Petitioner was taking any medications, to which Petitioner replied he was "taking a

17  prescription for an anti-inflammatory" and Prozac.  (Respondents' Exh. C at 43-44)

18  Petitioner assured the court that nothing about his "condition or medicines that [he had]

19  taken [made] him confused or ma[d]e it difficult for [him] to think clearly. . . ."

20  (Respondents' Exh. C at 44)  The court then noted that Petitioner "is thinking clearly at this

21  point in time."  (Respondents' Exh. C at 44)

22         Petitioner plead guilty in CR2003-34552 to attempted molestation of a child, a class 3

23  felony and dangerous crime against children (Amended Count 1); attempted molestation of a

24  child, a class 3 felony and dangerous crime against children (Amended Count 2); and

25  attempted sexual conduct with a minor, a class 3 felony and dangerous crime against

26  children (Amended Count 4).  (Respondents' Exhs. C, O, P)

27         At the August 2, 2004 sentencing hearing, Petitioner continued to represent himself

28  and advisory counsel, William Peterson, was present.  The court sentenced Petitioner on the

1   molestation charges in Amended Count 1, to an aggravated term of 15 years' imprisonment.

2   (Respondents' Exh. R)  For Amended Counts 2 and 4, the trial court suspended sentence and

3   imposed a term of lifetime probation.  (Respondents' Exhs. Q, R)  Petitioner was notified of

4   his right to file a petition for post-conviction relief.  (Respondents' Exh. R)

5          **B. Post-Conviction Proceedings**

6          Although the record does not include a notice of post-conviction relief, on October

7   22, 2004, Petitioner filed a motion for extension of time to file a petition for post-conviction

8   relief pursuant to Ariz.R.Crim.P. 32.  (Respondents' Exh. S)  Thereafter, the trial court

9   issued an order noting that Petitioner had filed a notice of post-conviction relief and that he

10  requested to proceed *pro se.*  (Respondents' Exh. T)  The court ordered that Petitioner shall

11  represent himself, ordered preparation of the transcripts, and set filing deadlines.

12  (Respondents' Exh. T)   The trial court apparently construed Petitioner's motion for

13  extension of time as his notice of post-conviction relief.  (Respondents' Exh. V) Petitioner

14  subsequently requested, and the court granted, the "appointment of advisory counsel" to

15  assist him with his petition for post-conviction relief.  (Respondents' Exh. U)

16         On March 28, 2006, Petitioner filed a petition for post-conviction relief.

17  (Respondents' Exh. V)   On June 28, 2006, the trial court dismissed Petitioner's petition for

18  post-conviction relief.  (Respondents' Exh. Y)

19         On August 18, 2006, Petitioner filed a petition for review in the Arizona Court of

20  Appeals seeking review of the denial of his petition for post-conviction relief.

21  (Respondents' Exh. Z)   On September 5, 2006, the Arizona Court of Appeals dismissed the

22  appeal as untimely.  (Respondents' Exh. AA)   Petitioner filed a motion for reconsideration

23  of the order dismissing the petition for review.  (Respondents' Exh. BB)   The Arizona Court

24  of Appeals reconsidered its order and reinstated the petition for review for consideration by

25  the court.  (Respondents' Exh. CC)   On September 12, 2007, the Arizona Court of Appeals

26  summarily denied review.  (Respondents' Exh. DD)

27         **C. Petition for Writ of Habeas Corpus**

28

On February 28, 2008, Petitioner filed a timely petition for writ of habeas corpus challenging his convictions and sentences in CR2003-34552.  (docket # 1; docket # 15 at 6-8; docket # 21 at 9-10)  In his support of his claims, Petitioner states, "for factual support and legal argument see 'Brief.'" (docket # 1 at 5-8)  Petitioner, however, did not submit a supporting brief with his Petition.  (docket # 1)  Rather, several months later, and with leave of Court, Petitioner filed a Supplemental Brief in Support of Petition for Writ of Habeas Corpus expanding his claims. (docket # 14)   Petitioner raises the following claims: (1) he was denied his Sixth Amendment right to counsel and that denial deprived the court of subject matter jurisdiction; (2) he was denied his Sixth Amendment right to effective assistance of counsel; (3) his waiver of his Sixth Amendment right to counsel was invalid; (4) he was denied his Sixth Amendment right to a jury trial on aggravating factors pursuant to *Blakely v. Washington*, 542 U.S.  296 (2000); (5) his Fourth Amendment right to be free from unreasonable searches and seizures was violated; (6) Arizona's post-conviction and appellate process did not protect Petitioner's constitutional rights, and (7) Petitioner's guilty plea was not knowingly and voluntarily entered because (a) counsel did not advise Petitioner of the "acts" required to be guilty of the charges, (b) counsel did not advise Petitioner that probation was not mandatory, and (c) the trial judge coerced Petitioner's guilty plea by "removing Petitioner from an ambulance prior to his transfer to the hospital for injuries sustained the morning of 6/30/2004 prior to the plea colloquy.  (dockets # 1, # 14)  In accordance with Court orders, Respondents filed an Answer and a Supplemental Answer addressing Petitioner's claims.  (dockets # 15, # 21)  Petitioner did not file a reply and the time for doing so has long passed.

## II.  Exhaustion and Procedural Bar

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him.  28 U.S.C. § 2254(b).  When seeking habeas relief, petitioner bears the burden of showing that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The exhaustion inquiry focuses on the availability of state remedies at the time the petition for

writ of habeas corpus is filed in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The prisoner "shall not be deemed to have exhausted . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In other words, proper exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. 845. "One complete round" includes filing a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.*   State prisoners may skip a procedure occasionally employed by a state's courts to provide relief only if a state law or rule precludes use of the procedure, or the "State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for purposes of exhaustion." *Id.* at 848, 850.

## A. Proper Forum

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). Contrary to Respondents' assertion, in Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles* , 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

Respondents argue that pursuant to *Baldwin v. Reese*, 541 U.S. 27 (2004), non-capital defendants must exhaust their claims in the Arizona Supreme Court. Respondents' argument hinges on the following language in *Baldwin*, "[t]o provide the State with the necessary 'opportunity,' [to rule on his claims] the prisoner must 'fairly present' his claim in

1    each appropriate state court (*including a state supreme court with powers of discretionary*

2    *review*), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at

3    29 (emphasis added) (citations omitted).  Respondents latch onto a single phrase, "including

4    a state supreme court with powers of discretionary review," to support their argument and

5    ignore the basis for this statement.  In *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), the

6    Supreme Court explained that proper exhaustion requires the prisoner to "give the state

7    courts one full opportunity to resolve any constitutional issues by invoking one complete

8    round of the State's established appellate review process." *O'Sullivan*, 526 U.S. 845. "One

9    complete round" includes filing a "petition[] for discretionary review *when that review is*

10   *part of the ordinary appellate review procedure in the State*." *Id.* (emphasis added).

11        "Arizona has declared that its complete round [of appellate review] does not include

12   discretionary review before the Arizona Supreme Court." *Swoopes*, 940 F.3d 1308.[4]  Thus,

13   contrary to Respondents' assertion, *Baldwin* does not require a non-capital prisoner in

14   Arizona, such as Petitioner, to present his claims to the Arizona Supreme Court.

15        **B.  Fair Presentation**

16        In addition to presenting his claims to the proper court, a state prisoner must fairly

17   present those claims to that court to satisfy the exhaustion requirement.  Fair presentation

18   requires a petitioner to describe both the operative facts and the federal legal theory to the

19   state courts. *Baldwin*, 541 U.S. at 28.  It is not enough that all of the facts necessary to

20   support the federal claim were before the state court or that a "somewhat similar" state law

21   claim was raised. *Baldwin*, 541 U.S. at 28 (stating that a reference to ineffective assistance

22   of counsel does not alert the court to federal nature of the claim).  Rather, the habeas

23   petitioner must cite in state court to the specific constitutional guarantee upon which he

---

25   [4] In support of their assertion that discretionary review by the Arizona Supreme Court is part
26   of the appeals process in Arizona, Respondents cite *State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d
     1159, 1163 (1989).  (docket # 15 at 10 n. 2)  *Ikirt* was decided before the April 1989
27   amendments to A.R.S. § 12-120.21(A)(1) and § 13-4031which omitted the phrase "or life
     imprisonment" and effectively gave the Arizona Court of Appeals jurisdiction over criminal
28   convictions carrying life sentences.

1    bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001).

2    Similarly, general appeals to broad constitutional principles, such as due process, equal

3    protection, and the right to a fair trial, are insufficient to establish fair presentation of a

4    federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000),

5    *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982,

6    987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a

7    constitutional guarantee," such as a naked reference to "due process," or to a "constitutional

8    error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States"

9    does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even

10   if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same

11   considerations" under state or federal law, the petitioner must make the federal nature of the

12   claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*,

13   232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court

14   must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*,

15   541 U.S. at 27.

16        In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of

17   satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2)

18   through the proper vehicle, and (3) by providing the proper factual and legal basis for the

19   claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

20        **C. Procedural Default**

21        A habeas petitioner's claims may be precluded from federal review in either of two

22   ways. First, a claim may be procedurally defaulted in federal court if it was actually raised

23   in state court but found by that court to be defaulted on state procedural grounds such as

24   waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S.

25   at 729-30. Thus, a state prisoner may be barred from raising federal claims that he did not

26   preserve in state court by making a contemporaneous objection at trial, on direct appeal, or

27   when seeking post-conviction relief. *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)

28   (stating that failure to raise contemporaneous objection to alleged violation of federal rights

1    during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d

2    1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of

3    Appeals held that habeas petitioner had waived claims by failing to raise them on direct

4    appeal or in first petition for post-conviction relief.)  If the state court also addressed the

5    merits of the underlying federal claim, the "alternative" ruling does not vitiate the

6    independent state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer*

7    *v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance

8    of counsel claims "barred under state law," but also discussed and rejected the claims on the

9    merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling"

10   and the claims were procedurally defaulted and barred from federal review).  A higher

11   court's subsequent summary denial of review affirms the lower court's application of a

12   procedural bar.  *Nunnemaker*, 501 U.S. at 803.

13         The second procedural default scenario arises when a state prisoner failed to present

14   his federal claims to the state court, but returning to state court would be "futile" because the

15   state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

16   previously unraised claims.  *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*,

17   303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035,

18   1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-

19   conviction review is precluded for claims waived at trial, on appeal, or in any previous

20   collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must

21   be filed within thirty days of trial court's decision).  A state post-conviction action is futile

22   where it is time-barred.  *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th

23   Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal

24   of an Arizona petition for post-conviction relief, distinct from preclusion under Rule

25   32.2(a)).  This type of procedural default is known as "technical" exhaustion because

26   although the claim was not actually exhausted in state court, the petitioner no longer has an

27   available state remedy.  *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted

28

1  his federal claims in state court meets the technical requirements for exhaustion; there are no

2  remedies any longer 'available' to him.").

3  **D.  Excusing Procedural Default**

4  In either case of procedural default, federal review of the claim is barred absent a

5  showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Cook v.*

6  *Schriro*, 516 F.3d 802, 827-29 (9th Cir. 2008); *Dretke v. Haley*, 541 U.S. 386, 393-94,

7  (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To establish "cause," a petitioner

8  must establish that some objective factor external to the defense impeded his efforts to

9  comply with the state's procedural rules.  *Id.*  The following objective factors may constitute

10  cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a

11  claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel.

12  *Id.*  Ordinarily, the ineffective assistance of counsel in collateral proceedings does not

13  constitute cause because "the right to counsel does not extend to state collateral proceedings

14  or federal habeas proceedings." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.

15  1996).

16  Prejudice is actual harm resulting from the constitutional violation or error.  *Magby v.*

17  *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a habeas petitioner

18  bears the burden of demonstrating that the alleged constitutional violation "worked to his

19  actual and substantial disadvantage, infecting his entire trial with error of constitutional

20  dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d

21  1119, 1123 (9th Cir. 1996).  Where petitioner fails to establish cause, the court need not

22  reach the prejudice prong.

23  A federal court may also review the merits of a procedurally defaulted claim if

24  petitioner demonstrates that failure to consider the merits of his claim will result in a

25  "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

26  "fundamental miscarriage of justice" occurs when a constitutional violation has probably

27  resulted in the conviction of one who is actually innocent.  *Id.*  To satisfy the "fundamental

28  miscarriage of justice" standard, petitioner must establish that it is more likely than not that

- 11 -

1    no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

2    evidence.  *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).  Even if petitioner asserts a

3    claim of actual innocence to excuse his procedural default, federal habeas relief may not be

4    granted absent a finding of an independent constitutional violation occurring in the state

5    criminal proceedings.  *Dretke*, 541 U.S. at 393-94.

6    **III.  Analysis of Claims**

7        **A. Sixth Amendment Right to Counsel and Subject Matter Jurisdiction**

8            In Ground I of the Original Petition and in his Supplemental Brief, Petitioner asserts

9    that he was denied his Sixth Amendment right to counsel.  (docket # 1 at 5; docket # 14 at 2,

10   8, 14)  Petitioner also argues that because he was denied his Sixth Amendment right to

11   counsel, the trial court lacked subject matter jurisdiction.  (docket # 14 at 2, 22-28)

12   Respondents assert that Petitioner's claim that he was denied his Sixth Amendment right to

13   counsel is procedurally defaulted because Petitioner failed to raise it as a federal claim to the

14   Arizona Court of Appeals.[5]  (docket # 15 at 14)

15       **1.  Sixth Amendment Right to Counsel**

16           In his petition for post-conviction relief, Petitioner argued that he was denied his

17   constitutional right to representation at every stage of the proceedings.  (Respondents' Exh.

18   V)  On appeal of the denial of his petition for post-conviction relief, Petitioner did not assert

19   a denial-of-counsel claim.  (Respondents' Exh. Z)  Petitioner's failure to present the federal

20   claim that he was denied his Sixth Amendment right to counsel to the Arizona Court of

21   Appeals renders that claims procedurally defaulted.  To exhaust a federal claim, it is not

22   enough that all the facts necessary to support the federal claim were before the state courts

23   or that a "somewhat similar" state law claim was raised.  *Duncan*, 513 U.S. at 365-66.  Even

24   if the basis of the federal claim is "self-evident" or if the claim would be decided "on the

25

26           [5]  Respondents also assert that Ground I is procedurally defaulted because Petitioner did not
27   present this claim to the Arizona Supreme Court.  (docket # 15 at 13)  The Court has already
     rejected Respondents' assertion that Petitioner was required to exhaust his claims to the Arizona
28   Supreme Court and will not revisit that issue.  *See* Section II, supra.

1  same considerations" under state or federal law, the petitioner must make the federal nature
2  of the claim known. *Lyons*, 232 F.3d at 668.  Because Petitioner did not present his claim
3  that he was denied his Sixth Amendment right to counsel to the Arizona Court of Appeals as
4  a federal claim, that claim is not properly exhausted and is procedurally defaulted as
5  discussed in Section IV, *infra*.

6          Moreover, Petitioner's claim that he was denied his Sixth Amendment right to
7  counsel lacks merit.  Rather than being denied his right to counsel, Petitioner voluntarily
8  and knowingly waived his right to counsel and chose to represent himself.  During the
9  pretrial proceedings, Petitioner was insistent on representing himself.  He informed the court
10 that he "need[ed] to take control" of his case.  (Respondents' Exh. EE at 8-9)  The court
11 informed Petitioner of the dangers of self-representation and informed him if he proceeded
12 with the assistance of counsel, who later proved to be ineffective, he had certain remedies.
13 (Respondents' Exh. EE at 11)  Petitioner responded that, "I understand and appreciate what
14 you are saying, Your Honor.  I have read the remedies.  But the issues go far beyond that."
15 (Respondents' Exh. EE at 11)  The trial court advised Petitioner in detail of the rights he
16 was waiving, conducted a waiver-of-counsel colloquy, and advised Petitioner of his
17 sentencing exposure.  (Respondents' Exh. EE at 6-21)  The court also advised Petitioner
18 that he would be responsible for asserting legal defenses, interviewing witnesses, conducting
19 investigation, examining and cross-examining witnesses, and presenting opening statement
20 and closing argument.  (Respondents' Exh. EE at 14-17)  Petitioner stated that, "I believe I
21 am making the correct decision.  I believe I am intelligent enough to make that decision."
22 (Respondents' Exh. EE at 21)  The court found that Petitioner "knowingly, voluntarily, and
23 intelligently chose and decides to represent himself. . . ."  (Respondents' Exh. EE at 21)

24         A knowing and intelligent waiver of the right to counsel requires awareness of the
25 charges, possible penalties, and dangers and disadvantages of self-representation.  *Harding*
26 *v. Lewis*, 834 F.2d 853, 854 (9th Cir. 1987).  The record reflects that Petitioner was
27 adequately warned of the charges, possible penalties, and dangers of self-representation.
28 The record reflects that Petitioner wanted to "take control" of his case.  Because Petitioner

- 13 -

1   effectively waived his right to counsel, his claim that he was denied his Sixth Amendment

2   right to counsel fails.

3          **2.  Subject Matter Jurisdiction**

4          Petitioner further argues that the denial of his Sixth Amendment right to counsel

5   deprived the court of subject matter jurisdiction.   (docket # 14 at 2, 22-28)   This claim is

6   procedurally defaulted and barred from federal habeas corpus review because Petitioner did

7   not present this claim to the Arizona courts.  28 U.S.C. § 2254; *see* Section IV, *infra*.

8   Moreover, this claim lacks merit.

9          Petitioner cites *Johnson v. Zerbst*, 304 U.S. 458 (1938) for the proposition that if "this

10  requirement [right-to-counsel] of the Sixth Amendment is not complied with, the court no

11  longer has jurisdiction to proceed." (docket # 14 at 22)  *Zerbst* does not apply to Petitioner's

12  case because he knowingly and voluntarily waived his right to counsel.  In *Zerbst*, the Court

13  stated:

14          Since the Sixth Amendment constitutionally entitles one charged with
        crime to the assistance of counsel, compliance with this constitutional
15      mandate is an essential jurisdictional prerequisite to a federal court's
        authority to deprive an accused on his life or liberty.  *When this right is*
16      *properly waived, the assistance of counsel is no longer a necessary element*
        *of the court's jurisdiction to proceed to conviction and sentence.*
17
        *  *  *
18      When collaterally attacked, the judgment of a court carries with it a
        presumption of regularity.  Where a defendant, without counsel, acquiesces
19      in a trial resulting in his conviction and later seeks release by the
        extraordinary remedy of habeas corpus, *the burden of proof rests upon him*
20      *to establish that he did not competently and intelligently waive his*
        *constitutional right to assistance of counsel*.
21
22  *Zerbst*, 304 U.S. at 467-69 (emphasis added).   Because Petitioner waived his right to

23  counsel, his claim that he was denied his Sixth Amendment right to counsel fails.

        **B.  Ineffective Assistance of Counsel**
24
25         In Grounds I and II of his Original Petition (docket # 1 at 5, 6) and in his

26  Supplemental Petition (docket # 14 at 13, 16, 20), Petitioner asserts that trial counsel was

27  ineffective before December 19, 2003 for failing to discuss plea offers with him, and after

28

December 19, 2003.  Respondents assert that this claim is procedurally defaulted and barred

from federal habeas corpus review.  (docket # 15 at 15)  The Court agrees.

**1.  Exhaustion Analysis**

This claim is not properly exhausted because Petitioner did not raise a federal claim

of ineffective assistance of counsel in his petition for review to the Arizona Court of

Appeals.  In his petition for post-conviction relief, Petitioner cited a Ninth Circuit case

discussing ineffective assistance of counsel in support of this claim.  (Respondents' Exh. V)

However, on appeal, he did not cite to the United States Constitution or to federal law in

support of his claim of ineffective assistance of counsel.  (Respondents' Exh. Z)  Petitioner,

rather, cited state cases in support of his claim that counsel failed to adequately discuss the

plea offers with him.  (Respondents' Exh. Z at 8)  Petitioner's citation to state law was

inadequate to fairly present a federal claim of ineffective assistance of counsel to the

Arizona Court of Appeals.  (Respondents' Exh. Z)  In order for a federal issue to be

presented by the citation of a state decision dealing with both federal and state issues

relevant to the claim, "the citation must be accompanied by some clear indication that the

cases involve federal issues."  *Casey v. Moore*, 386 F.3d 896, 912 (9th Cir. 2004) (holding

that the petitioner's citation to a state case, with no signal in the text or brief that the

petitioner raised a federal claim or relief on state law cases that resolve federal issues, did

not constitute fair presentation of his federal claim).   "Exhaustion demands more than drive-

by citations, detached from any articulation of an underlying federal legal theory."  *Castillo*,

399 F.3d at 1003.   Even if the basis of the federal claim is "self-evident" or if the claim

would be decided "on the same considerations" under state or federal law, the petitioner

must make the federal nature of the claim known.  *Lyons*, 232 F.3d at 668.   Because

Petitioner did not present his claim of ineffective assistance of counsel as a federal claim in

his petition for review to the Arizona Court of Appeals, that claim is not properly exhausted

and is barred from federal review as discussed in Section IV, *infra*.

1

### 2.   Analysis

2      Moreover, Petitioner's claim of ineffective assistance of counsel fails because

3  Petitioner's guilty plea waived his right to challenge any pre-plea conduct of counsel.

4  Petitioner's claim also lacks merit.

5      **a.  Waiver of Right to Challenge Pre-Plea Conduct**

6      "When a criminal defendant has solemnly admitted in open court that he is in fact

7  guilty of the offense with which he is charged, he may not thereafter raise independent

8  claims relating to the deprivation of constitutional rights that occurred prior to the entry of

9  the guilty plea." *Tollet v. Henderson*, 411 U.S. 258, 267 (1973); *see United States v. Broce*,

10  488 U.S. 563, 574 (1989) (recognizing that a criminal defendant who pleads guilty waives

11  the right to challenge alleged violation of constitutional rights that are unrelated to the plea

12  agreement); *United States v. Montilla*, 870 F.2d 549, 552-53 (9th Cir. 1989), *amended on*

13  *other grounds*, 907 F.2d 115 (9th Cir. 1990) (holding that by pleading guilty, defendant

14  waived right to challenge alleged due process violation caused by outrageous government

15  conduct).   Accordingly, Petitioner's complaints about counsel's pre-plea actions are waived

16  by a guilty plea.  *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1994) (holding that

17  defendant's guilty plea waived any claim that he was denied assistance of counsel at a pre-

18  plea hearing); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (holding that guilty plea

19  precluded habeas petitioner from raising pre-plea claim that his attorneys failed to challenge

20  petitioner's confession).

21      In this case, Petitioner waived his challenges to counsel's pre-plea conduct by

22  pleading guilty.  *See Bohn*, 956 F.2d at 209; *Moran*, 57 F.3d at 700.   Because both of

23  Petitioner's claims of ineffective assistance pertain to pre-plea conduct, those claims are

24  waived by his guilty plea.

25      **b.  Merits Analysis**

26      Moreover, Petitioner's claims of ineffective assistance of counsel lack merit.

27  Petitioner argues that counsel was ineffective before December 19, 2003 for failing to advise

28  him of the State's plea offer.  (docket # 1 at 5)  He also asserts that counsel was ineffective

1    after December 19, 2003.  (docket # 1 at 6)  Petitioner's challenges to counsel's conduct

2    after December 19, 2003 are conclusory.  Petitioner does not identify any conduct of counsel

3    after December 19, 2003 that was allegedly deficient or explain how he was prejudiced.

4    Petitioner's unsupported, conclusory allegations are not sufficient to support a claim for

5    federal habeas relief. *See, Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that

6    conclusory allegations with no reference to the record or other evidence do not warrant

7    habeas relief.)  Additionally, because Petitioner fails to allege specific facts showing

8    prejudice, the reasonableness of counsel's representation is inconsequential.  *Hill v.*

9    *Lockhart*, 474 U.S. 52, 60 (1985).

10          Petitioner also fails to establish that counsel was ineffective before December 19,

11   2003.  The controlling Supreme Court precedent on claims of ineffective assistance of

12   counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

13   must show that counsel's performance was objectively deficient and that counsel's deficient

14   performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d

15   1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the

16   wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When

17   reviewing counsel's performance, the court engages a strong presumption that counsel

18   rendered adequate assistance and exercised reasonable professional judgment. *Strickland*,

19   466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be

20   made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

21   counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

22   time."  *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely

23   limited."  *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other*

24   *grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial

25   strategy" do not constitute ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.

26          To establish a Sixth Amendment violation, petitioner must also establish that he

27   suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at

28   691-92; *United States v. Gonzalez-Lopez*, ___U.S.___, 126 S.Ct. 2557, 2563 (2006) (stating

1   that "a violation of the Sixth Amendment right to effective representation is not 'complete'

2   until the defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a

3   "reasonable probability that, but for counsel's unprofessional errors, the result of the

4   proceeding would have been different.  A reasonable probability is a probability sufficient to

5   undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069;

6   *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The court may proceed directly to the

7   prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing

8   *Strickland*, 466 U.S. at 697).  The court, however, may not assume prejudice solely from

9   counsel's allegedly deficient performance.  *Jackson*, 211 F.3d at 1155.  Even assuming that

10  counsel's performance was deficient in this case, Petitioner has not established prejudice.

11          In support of his Supplemental Petition, Petitioner attaches a plea offer made by the

12  State in December of 2003 in a separate case, CR2003-21990.  (docket # 14, Appendix I)

13  Petitioner also submits a December 17, 2003 letter, in which the State offered a plea

14  encompassing the indictment in both CR2003-21990, and in CR2003-34552, the case at

15  issue in the pending habeas corpus petition.  (*Id.*)   The offer was to plead guilty to one count

16  of attempted molestation of a child, a class 3 felony; one count of attempted sexual conduct

17  with a minor, a class 3 felony; and one count of false swearing, a class 6 undesignated

18  offense. (docket # 14, Appendix I)   The offer related to sentencing was that Petitioner

19  would serve a prison term of 10 to 15 years for the molestation offense, be placed on

20  lifetime probation for the offense of sexual conduct with a minor, and be placed on

21  probation for false swearing.  (docket # 14, Appendix I)   The consolidated plea offer

22  regarding the perjury offense in CR2003-21990 reduced the perjury charge, a class 4 felony,

23  to false swearing, a class 6 undesignated offense, dropped the requirement that he plead

24  guilty with a prior felony conviction, and guaranteed Petitioner probation, rather than

25  imprisonment.

26          Even assuming counsel was deficient in this case, Petitioner has not shown prejudice.

27  To show prejudice, Petitioner must establish a "reasonable probability that, but for counsel's

28  unprofessional errors, the result of the proceeding would have been different." *Strickland*,

1    466 U.S. at 694.  To prove prejudice where counsel allegedly failed to inform the petitioner

2    about a plea offer, the petitioner must prove there was a reasonable probability he would

3    have accepted the offer.  *Strickland*, 466 U.S. at 693.  The record reflects that Petitioner

4    would not have accepted the initial plea offer which included the perjury offense in a related

5    case.  Significantly, when the plea offer was extended until March of 2004, Petitioner did

6    not accept the plea offer, but proceeded to trial on the perjury charge in CR2003-21990.

7    Accordingly, Petitioner cannot establish prejudice as a result of counsel's alleged failure to

8    advise him of the state's plea offer.  Additionally, the plea offer was held open until after

9    Petitioner became his own counsel.  Petitioner ultimately accepted a plea offer in CR2003-

10   34552 that included an open range of prison time.  (Respondents' Exh. O)  Petitioner has

11   failed to show that a more beneficial plea offer was lost because trial counsel failed to

12   explain it to him.  *See Engelen v. United States*, 68 F.3d 238, 240–41 (8th Cir. 1995)

13   (defendant failed to establish prejudice where he made "no direct assertion that he would

14   have pled guilty if his counsel had" properly advised him); *Ellzey v. United States*, 210

15   F.Supp.2d 1046, 1051 (C.D. Ill. 2002) (counsel's failure to advise defendant to accept plea

16   agreement did not prejudice defendant absent any evidence, other than defendant's

17   self-serving affidavit).

18            **C.  Waiver of Right to Counsel**

19            In his Supplemental Petition, Petitioner asserts that his waiver of his Sixth

20   Amendment right to counsel was invalid.  (docket # 14 at 17-18)  Respondents assert that

21   this claim is procedurally defaulted and, alternatively, that it lacks merit. (docket # 15 at 18)

22            **1.  Exhaustion Analysis**

23            Respondents concede that Petitioner raised his Sixth Amendment challenge to his

24   waiver of counsel in his petition for post-conviction relief and in his petition for review to

25   the Arizona Court of Appeals.  (docket # 15 at 18; Respondents' Exh. V, Z)  Respondents

26   argue that Petitioner's failure to present this claim to the Arizona Supreme Court renders it

27   procedurally defaulted.  (docket # 15 at 18-19)  Contrary to Respondents' assertion, in

28   Arizona, unless a prisoner has been sentenced to death, the exhaustion requirement is

1  satisfied if a petitioner has presented his federal claim to the Arizona Court of Appeals either

2  on direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles*, 483

3  F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.

4  1999)). Accordingly, Petitioner has properly exhausted his claim that his waiver of his Sixth

5  Amendment right to counsel was involuntary. The Court, therefore, will address the merits

6  of this claim.

7       **2. Merits Review**

8       In his Supplemental Petition, Petitioner argues that his waiver of his right to counsel

9  was not valid. (docket # 14 at 17-19) A knowing and intelligent waiver of the right to

10  counsel requires awareness of the charges, possible penalties, and dangers and disadvantages

11  of self-representation. *Harding v. Lewis*, 834 F.2d 853, 857 (9th Cir. 1987).

12       The record reflects that Petitioner's waiver of his right to counsel comported with

13  these requirements. At a December 19, 2003 pretrial conference, Petitioner filed a *pro se*

14  motion to waive his right to counsel. (Respondents' Exhs. L, M) The court addressed

15  Petitioner's motion during the conference. (Respondents' Exh. EE) Petitioner informed that

16  court that he wanted to waive his right to counsel and represent himself. The trial court

17  advised Petitioner of the rights he was waiving and warned him of the dangers and

18  disadvantages of representing himself. (Respondents' Exh. EE at 9-36) Petitioner stated

19  that:

20             Your honor, I am aware of the dangers. I feel that there's a lot
              of issues that weren't previously addressed by counsel that was
21             appointed.

22             I feel that I need to take control. Previous counsel that had stated
              to me that they would control the direction of the case, regardless
23             of my wishes. And for that reason, your Honor, I'm requesting
              to represent myself. However, I would like to retain [advisory
24             counsel].

25  (Respondents' Exh. EE at 8-9)

26       The court then advised Petitioner of the protections available to a defendant who was

27  represented by counsel who may have been ineffective. (Respondents' Exh. EE at 10-11)

28  Petitioner responded, "Yeah, and I understand and I appreciate what you are saying, Your

1  honor.  I have read the remedies.  But the issues go far beyond that." (Respondents' Exh.

2  EE at 11)   The court reminded Petitioner of his right to an attorney.   And stated that if

3  Petitioner could not afford an attorney, one would be appointed, as had already been done in

4  his case.  (Respondents' Exh. EE at 11)  The court inquired whether Petitioner had

5  consumed any alcohol or medicine with the past 24 hours.  (Respondents' Exh. EE at 7)

6  Petitioner advised the court that he had taken 20 milligrams of Prozac the day before

7  pursuant to prescription.  (Respondents' Exh. EE at 7)   He assured the court that nothing,

8  including that medication, was making him confused or making it difficult for him to think

9  clearly.  (Respondents' Exh. EE at 7)

10         The court advised Petitioner of the potential sentences he faced.  (Respondents' Exh.

11  EE at 14-17)   Specifically, the court told Petitioner that, if convicted of the child

12  molestation charges, he could be sentenced to life in prison without the possibility of release

13  until after serving at least 35 years in prison.  (Respondents' Exh. EE at 14-15)  With respect

14  to the sexual conduct with a minor charge, the court informed Petitioner that he could face a

15  "mandatory sentence . . . of life in prison and release would only be possible after

16  [Petitioner] served at least 35 years." (Respondents' Exh. EE at 15)  The court further

17  explained that "it would be mandatory that [Petitioner's] sentence with respect to the sexual

18  conduct with a minor charge be served consecutively to your sentences with respect to child

19  molest[ation.]" (Respondents' Exh. EE at 15)   The court also told Petitioner that "[i]t

20  would be mandatory that all sentences in [CR2003-34552] be consecutive to any probation

21  or parole violation sentences." (Respondents' Exh. EE at 15)   The court also explained, in

22  detail, Petitioner's potential sentences on the sexual abuse and furnishing obscene items

23  charges.  (Respondents' Exh. EE at 15-17)

24         After discussing Petitioner's sentencing exposure, the court informed Petitioner that

25  if he represented himself, he would "be held to the same standard as an attorney regarding

26  the presentation of his case." (Respondents' Exh. EE at 17)  The court explained that this

27  standard includes knowledge of "courtroom procedures, applicable case law, and rules of

28  evidence and rules of criminal procedure." (Respondents' Exh. EE at 17-18)  Petitioner

1   indicated that he understood those "matters," and had studied "the Rule," including the

2   Rules of Criminal Procedure, while in custody during the last two years.  (Respondents'

3   Exh. EE at 18-19)

4       After this lengthy discussion, the court against asked Petitioner if he "still wish[ed] to

5   give up his right to counsel . . . and to represent himself. . . ."  (Respondents' Exh. EE at 20)

6   Petitioner responded, "Yes, I do."  (Respondents' Exh. EE at 20)  The court then stated that

7   "[y]ou can change your mind at any time. [I]f at any time, you wish to be represented by a

8   lawyer let me know and I will appoint one for you."  (Respondents' Exh. EE at 20)

9   Petitioner indicated that he did not have any questions regarding the waiver of counsel.

10  Petitioner stated, "I believe that I'm making the correct decision.  I believe that I'm

11  intelligent enough to make that decision."  (Respondents' Exh. EE at 21)

12      The court found that Petitioner "knowingly, intelligently, and voluntarily waives his

13  right to representation by an attorney" and granted Petitioner's motion to represent himself.

14  (Respondents' Exh. EE at 21, Exh. M)  The court appointed Petitioner's then-counsel, Toby

15  Schmich, as advisory counsel.  (Respondents' Exhs. EE at 21, M, N)  Petitioner informed

16  the court that he did not want Ms. Schmich as advisory counsel because of "irreconcilable

17  differences" between them as a result of an argument they had had during a conference the

18  day before.  (Respondents' Exh. EE at 21-22)   Petitioner explained that Ms. Schmich had

19  made comments to Petitioner regarding the court's likely rulings, and Petitioner did not

20  think "she had the authority to make those comments to [Petitioner] since she didn't have the

21  authority to make decisions on [the court's] behalf."  (Respondents' Exh. EE at 22-23)

22  After being assured by Ms. Schmich that she could serve as advisory counsel, the court

23  denied Petitioner's request for new advisory counsel.  (Respondents' Exh. EE at 25)

24      The record reflects that Petitioner's waiver of the right to counsel was knowing and

25  intelligent because Petitioner was aware of the charges, possible penalties, and dangers and

26  disadvantages of self-representation.  *Harding v. Lewis*, 834 F.2d 853, 857 (9th Cir. 1987).

27  Contrary to Petitioner's assertion, his waiver of his right to counsel was valid and he is not

28  entitled to habeas corpus relief on this basis.

**D. *Blakely* Claim**

In his Original Petition, docket # 1 at 7, and in the Supplemental Brief, docket # 14 at 29, Petitioner argues that his sentences violate his Sixth Amendment right to have a jury find aggravating factors in accordance with *Blakely v. Washington*, 542 U.S. 296 (2004).

**1. Exhaustion Analysis**

Respondents assert that this claim is procedurally defaulted.  (docket # 15 at 20) Respondents concede that Petitioner presented this claim in his petition for post-conviction relief and in his petition for review to the Arizona Court of Appeals.  (docket # 15 at 20) Respondents argue that Petitioner's Sixth Amendment sentencing challenge is procedurally defaulted because he did not present that claim to the Arizona Supreme Court.  (*Id.*) Contrary to Respondents' assertion, Petitioner properly exhausted his *Blakely/Apprendi* claim by presenting it to the trial court and the Arizona Court of Appeals on post-conviction review.  (Respondents' Exhs, V, Z)   In Arizona, unless a prisoner has been sentenced to death, the exhaustion requirement is satisfied if a petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief.  *Crowell v. Knowles*, 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).  Accordingly, Petitioner properly exhausted his *Blakely* claim.

**2. Waiver Pursuant to Guilty Plea**

Respondents' further argue that Petitioner waived his Sixth Amendment challenge to his sentences pursuant to his guilty plea.  (docket # 15 at 21)   The Court agrees that Petitioner's guilty plea effectively waived his right to challenge his sentences on Sixth Amendment grounds.

In his guilty plea, Petitioner specifically agreed to waive his right to have a jury determine aggravating circumstances.  (Respondents' Exh. O; Exh. C at 50-51)  Petitioner agreed that "by entering into a plea agreement, the defendant consents to judicial fact finding by a preponderance of the evidence as to any aspect or enhancement of sentence . . . ."  (Respondents' Exh. O at 2)   The plea agreement also provides that "the Defendant

hereby waives and gives up any and all motions, defenses, objections, or requests which he/she has made or raised, or could assert hereafter, to the Court's entry of judgment against him/her and imposition of a sentence upon him/her consistent with this agreement . . . ." (Respondents' Exh. O at 2)   During the change of plea hearing, the court advised Petitioner:

> [Y]ou do have a right . .  to have a jury determine whether or not any
> alleged aggravating circumstance exists.  As I understand it, you're choosing,
> well, by going ahead with the plea agreement, you will be giving up that
> right . . . .

(Respondents' Exh. C at 50)   On post-conviction review Petitioner challenged his sentences on *Blakely* grounds, and the trial court enforced Petitioner's waiver of his right to have a jury determine aggravating factors.  (Respondents' Exh. Y at 2) The state court found that Petitioner "expressly waived his right to a jury determination regarding aggravating circumstances."  (Respondents' Exh. Y at 2)   As the state court found, Petitioner's guilty plea waived his right to challenge his sentences on *Blakely* grounds.  *See United States v. Shedrick*, 493 F.3d 292, 303 (3rd Cir. 2007) (concluding that defendant's "*Blakely*-based contention," was  argument that defendant "waived as part of [his] plea agreement."); *United States v. Cortez-Arias*, 403 F.3d 1111 (9th Cir. 2005), *amended by* 425 F.3d 547, 548 n. 8 (2005) (joining other circuits in concluding that claim under *[United States v.] Booker*, 543 U.S. 220 (2005) was waived when he waived the right to appeal his sentence, noting that in exchange for his guilty plea and waiver, the defendant received a benefit).   Moreover, Petitioner's sentencing challenge lacks merit as discussed below.

### 3.  Merits of *Blakely* Claim

Petitioner argues that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2000) in which the Supreme Court held any factor which leads to a sentence greater than would be imposed based on the jury's finding of guilt must be found by a jury beyond a reasonable doubt.  (docket # 1 at 7; docket # 14 at 29)

Before *Blakely*, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

1    beyond a reasonable doubt." 530 U.S. at 490 (emphasis added).  The Supreme Court

2    specifically carved out an exception for prior convictions.  *Id.*; *United States v. Maria-*

3    *Gonzalez*, 268 F.3d 664, 670 (9th Cir. 2001) (holding prior aggravated felony conviction did

4    not constitute an element of the offense where base sentence for illegally reentering the

5    United States following deportation is enhanced if deportation was subsequent to conviction

6    for aggravated felony); *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025 (9th Cir. 2001)

7    (holding the district court could consider defendant's prior conviction in imposing sentence

8    enhancement even though such conduct had not been charged in the indictment, presented to

9    the jury, and proved beyond a reasonable doubt); *United States v. Pacheco-Zepeda*, 234 F.3d

10   411, 415 (9th Cir. 2001) (noting *Apprendi* held all prior convictions are exempt under

11   *Apprendi*'s new rule, therefore, district court properly considered prior convictions in

12   sentencing).

13        As previously stated, under *Blakely*, any factors which lead to a sentence greater than

14   that which would be imposed based on the jury's finding of guilt must be found by the jury.

15   542 U.S. at 301.  *Blakely* reaffirmed the exemption for prior convictions and reiterated that

16   they may serve as aggravating factors without further proof.  *United States v. Quintana-*

17   *Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004) (citing *Blakely*, 542 U.S. at 303).  *Blakely*

18   also clarified that the "statutory maximum" sentence is initially the presumptive term and is

19   the "maximum sentence the judge may impose solely *on the basis of the facts reflected in*

20   *the jury verdict or admitted by the defendant*.  In other words, the relevant 'statutory

21   maximum' is not the maximum sentence a judge may impose after finding additional facts,

22   but the maximum he may impose without any additional findings." *Blakely*, 542 U.S. at 303-

23   04 (emphasis in original).  The *Blakely* Court concluded that, before a trial court can impose

24   a sentence above the statutory maximum, a jury must find beyond a reasonable doubt, or

25   defendant must admit, all facts "*legally essential* to punishment."  *Blakely*, 542 U.S. at 313

26   (emphasis added).

27        In this case, the only aggravating circumstance found by the court was Petitioner's

28   prior conviction.  At the August 2, 2004 sentencing hearing, the court stated that it had

1 "considered the circumstances, [and] finds Mr. Chase's prior felony conviction to be

2 aggravating circumstances (sic) which justify an aggravated sentence." (Respondents' Exh.

3 D at 7) Based on Petitioner's prior felony conviction, the court imposed an aggravated term

4 of 15 years' imprisonment for Petitioner's conviction on Count 1. (Respondents' Exh. Q)

5 Petitioner's sentence did not run afoul of the Sixth Amendment. Petitioner' sentence was

6 aggravated solely on the basis of his prior conviction, which the trial court permissibly

7 found without submitting that factor to the jury. *See United States v. Castillo-Rivera*, 244

8 F.3d 1020, 1025 (9th Cir. 2001) (holding the district court could consider defendant's prior

9 conviction in imposing sentence enhancement even though such conduct had not been

10 charged in the indictment, presented to the jury, and proved beyond a reasonable doubt).

11       On Petitioner's other two counts of conviction, the court suspended imposition of

12 sentence and imposed lifetime probation. (Respondents' Exh. Q; Exh. D at 7-8) A term of

13 lifetime probation does not constitute an aggravated sentence pursuant to Arizona law.

14 A.R.S. § 13-901 (allowing the court to suspend imposition of sentence and place a defendant

15 on probation). Thus, *Blakely* does not apply to Petitioner's terms of lifetime probation.

16       In summary, Petitioner's sentences do not violate with Sixth Amendment as

17 discussed in *Blakely/Apprendi*.

18       **E. Fourth Amendment Claim**

19       In his Original Petition, Petitioner claims that the State violated his Fourth

20 Amendment Right to be free from illegal seizure of evidence. (docket # 1 at 8)

21 Respondents assert that this claim is procedurally defaulted and barred from habeas corpus

22 review. (docket # 15 at 24) The Court agrees.

23       Petitioner raised a claim related to "searches and seizures" in his petition for post-

24 conviction relief. (Respondents' Exh. V) However, he failed to raise it as a federal claim.

25 Additionally, Petitioner did not present this claim to the Arizona Court of Appeals.

26 (Respondents' Exh. Z) Because Petitioner did not fairly present this claim to the state

27 courts, it is procedurally defaulted and barred from review as discussed in Section IV, infra.

28

1    Moreover, even if this claim were properly exhausted, this Court cannot reach the

2    merits of Petitioner's Fourth Amendment claim.  By pleading guilty, Petitioner waived his

3    right to challenge any pre-plea constitutional violations.  *Tollett*, 411 U.S. at 267.

4    Additionally, when the state provides an opportunity for full and fair litigation of a fourth

5    amendment claim at trial and on direct review, the federal court will not grant habeas corpus

6    relief on the ground that evidence obtained through unconstitutional search or seizure was

7    introduced at his trial.  *Stone v. Powell*, 428 U.S. 465, 494 (1976), *r'hrg  denied*, 429 U.S.

8    874; *Mitchell v. Goldsmith*, 878 F.2d 319, 323 (9th Cir. 1989).  *Stone* only requires the

9    initial opportunity for a full and fair hearing.  *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir.

10   1986).  "Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas

11   corpus petition, into the trial court's subsequent course of action."  *Caldwell*, 781 F.2d at

12   715.  Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in

13   state court. (Respondents' Exh. FF)   Thus, Petitioner is not entitled to consideration of his

14   Fourth Amendment claim on habeas corpus review.

15   **F.  Adequacy of Arizona's Post-Conviction and Appellate Process**

16   In his Supplemental Petition, Petitioner asserts that Arizona's post-conviction relief

17   and appellate procedures did not protect his constitutional rights.  (docket # 14 at 2, 22-27)

18   Respondents assert that this claim is not cognizable on federal habeas corpus review and that

19   it is procedurally defaulted.

20   **1.  Whether Challenge to Arizona Law is Cognizable on § 2254 Review**

21   This Court can grant habeas corpus relief "only on the ground that [a petitioner] is in

22   custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

23   2254(a).  To the extent that Petitioner challenges the Arizona courts' application of

24   Arizona's laws governing post-conviction relief and appeal review in his case, his claim is

25   not subject to review by this Court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

26   (explaining that "it is not the province of a federal habeas court to reexamine state-court

27   determinations on state-law questions.")  The Arizona courts' construction, interpretation,

28   and application of Arizona's statutes and rules does not present a constitutional or federal

1    issue, and therefore is not cognizable on federal habeas corpus review.  *See Bonin v.*

2    *Calderon*, 77 F.3d 1155, 1161 (9th Cir. 1996) (stating that federal habeas corpus relief does

3    not lie for errors of state law unless error amounts to deprivation of petitioner's federal

4    constitutional rights); *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) (stating

5    that "a state's interpretation of its own laws or rules provides no basis for federal habeas

6    corpus relief, since no question of a constitutional nature is involved.")  In view of the

7    foregoing, Petitioner's challenge to Arizona's post-conviction and appellate procedure

8    should be dismissed as not cognizable in this proceeding.

9         **2.  Exhaustion Analysis**

10        Alternatively, as Respondents argue, Petitioner's challenge to Arizona's post-

11   conviction and appellate procedures is not properly exhausted and is procedurally defaulted.

12        To properly exhaust state remedies, a petitioner must have afforded every appropriate

13   state court the opportunity to rule upon the merits of his federal claim by "fairly presenting"

14   his claim to the state courts in a procedurally appropriate manner.  *See Castille*, 489

15   U.S.350-51; Baldwin v. Reese, 541 U.S. 27, 29 (2004).  Fair presentation requires petitioner

16   to have presented to the state courts the exact same federal claim he now asserts on habeas

17   corpus review by describing the facts and federal legal theory upon which the claim is based.

18   *Picard v. Connor*, 404 U.S. 270, 275-78 (1971) (stating that "we have required a state

19   prisoner to present the state courts with the same claim he urges upon the federal courts.").

20   New factual allegations also render a claim unexhausted when they fundamentally alter the

21   legal claim considered by the state court.  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

22        Petitioner did not claim on post-conviction review that Arizona's post-conviction and

23   appellate procedures failed to protect his constitutional rights.  Petitioner has never

24   presented this claim to the state courts in any proceeding.  In view of Petitioner's failure to

25   present his challenge to Arizona's post-conviction and appellate process to the state courts,

26   that claim is procedurally defaulted.  As discussed in Section IV, *infra*, this claim is barred

27   from federal habeas corpus review.

28

### G.  Guilty Plea Involuntary

In his Supplemental Petition, Petitioner contends that his guilty plea was not knowing and voluntary because: (a) counsel did not advise Petitioner of the "acts" required to be guilty of the charge; (b) counsel did not advise Petitioner that probation was not mandatory; and (c) the trial judge coerced Petitioner's plea by removing Petitioner from an ambulance prior to his transfer to the hospital for injuries sustained the morning of 6/30/04, prior to the plea colloquy.  (docket # 14 at 33-35)    Petitioner also asserts that the trial judge was biased. (docket # 14 at 34-35)  Respondents assert that these claims are procedurally defaulted because Petitioner did not fairly present them to the state courts.  (docket # 21 at 17)

In his petition for post-conviction relief, Petitioner did not raise grounds (a) and (b) at all.  (Respondents' Exh. V)   Although Petitioner mentioned the allegations contained in ground (c) by referring to "Judge Aceto dress[ing] in street clothes, influencing ambulance attendants, and having Petitioner taken to court instead of receiving medical care," he did not claim that Judge Aceto's behavior coerced his guilty plea or was evidence of judicial bias.  (Respondents' Exh. V at 15)   Moreover, the portion of the record which Petitioner cited in support of his claim of judicial coercion, does not relate to that claim. (Respondents' Exh. V at 15, citing Tr. 6/30/04 at 11, lines 7-9); (Respondents' Exh. C at 11)

Because Petitioner did not present the foregoing federal claims related to the voluntariness of his plea and judicial bias to the state courts, they are procedurally defaulted and barred from review, as discussed in Section IV below.

### IV.  Procedural Bar

As discussed above, because Petitioner failed to fairly present to the State courts his claims that: he was denied his Sixth Amendment right to counsel; the court lacked subject matter jurisdiction; he received ineffective assistance of counsel; his Fourth Amendment rights were violated; Arizona's appellate and post-conviction procedures are inadequate; and his guilty plea was involuntary, those claims are technically exhausted and procedurally barred.  Any attempt to return to state court to present those claims would be futile because they would be procedurally barred pursuant to Arizona law.  Petitioner is time-barred under

1  Arizona law from raising his claims in a successive petition for post-conviction relief

2  because the time for filing a notice of post-conviction relief has long expired. *See*

3  Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within

4  ninety days after the entry of judgment and sentence or within thirty days after the issuance

5  of the order and mandate in the direct appeal, whichever is later.")  Although Rule 32.4 does

6  not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P

7  32.1(d) through (h), Petitioner has not asserted that any of these exceptions apply to him.

8  Moreover, a state post-conviction action is futile where it is time-barred. *Beaty v. Stewart*,

9  303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997)

10  (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an

11  Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

12       Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

13  defendant is precluded from raising claims that could have been raised on direct appeal or in

14  any previous collateral proceeding. *See also Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

15  1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited

16  number of issues and waived other issues that he could have then raised, but did not); *State*

17  *v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded

18  from seeking post-conviction relief on grounds that were adjudicated, or could have been

19  raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State*

20  *v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994)(defendant's claim that his

21  sentence had been improperly enhanced by prior conviction was precluded by defendant's

22  failure to raise issue on appeal). The aforementioned claims could have been raised in

23  Petitioner's post-conviction relief proceeding. Consequently, the state court would find these

24  claims procedurally barred.  The Court will next address whether Petitioner has established a

25  basis for overcoming the procedural bar.

26       Habeas corpus review of Petitioner's procedurally defaulted claims is barred absent a

27  showing of "cause and prejudice" or a "fundamental miscarriage of justice."  *Dretke*, 541

28  U.S. at 393-94.  To establish "cause," a petitioner must establish that some objective factor

1   external to the defense impeded his efforts to comply with the state's procedural rules. *Id.*

2   The following objective factors may constitute cause: (1) interference by state officials, (2) a

3   showing that the factual or legal basis for a claim was not reasonably available, or (3)

4   constitutionally ineffective assistance of counsel. *Id.*   Prejudice is actual harm resulting

5   from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.

6   1984).  Where petitioner fails to establish cause for his procedural default, the court need not

7   consider whether petitioner has shown actual prejudice resulting from the alleged

8   constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

9        As a general matter, Petitioner's *pro se* status and ignorance of the law do not satisfy

10  the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir.

11  1986).  "[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se*

12  petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220

13  (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (9th Cir. 1999)).  Petitioner's

14  ignorance of the law and indigent status do not distinguish him from the great majority of

15  inmates pursuing habeas corpus relief.  Such circumstances are not extraordinary and do not

16  justify tolling the limitations period.  "If limited resources, lack of legal knowledge, and the

17  difficulties of prison life were an excuse for not complying with the limitation period, the

18  AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners

19  have these same problems in common." *Bolanos v. Kirkland*, No. 1:06-cv-00808-AWI-TAG

20  HC, 2008 WL 928252, * 4 (E.D.Cal. April 4, 2008).  *See also*, *Rasberry v. Garcia*, 448 F.3d

21  1150, 1154 (9th Cir. 2006)(affirming denial of equitable tolling because neither the district

22  court's failure to advise the petitioner of the right to amend his petition to include

23  unexhausted claims nor petitioner's inability to correctly calculate the limitations period

24  were extraordinary circumstances warranting equitable tolling); *Marsh v. Soares*, 223 F.3d

25  1217, 1220 (10th Cir. 2000) (holding that delays caused by prison inmate law clerk and law

26  library closures do not justify equitable tolling).  Likewise, Petitioner's lack of legal

27  assistance is not an extraordinary circumstance. *See, Ballesteros v. Schriro*, CV-06-675-

28  EHC (MEA), 2007 WL 666927 (D.Ariz., February 26, 2007) (noting that a petitioner's *pro*

1   *se* status, ignorance of the law, lack of representation during the applicable filing period, and

2   temporary incapacity do not constitute extraordinary circumstances) (citing *Fisher v.*

3   *Johnson*, 174 F.3d 170, 714-15 (5th Cir. 1999)); *Shoemate v. Norris*, 390 F.3d 595, 598 (8th

4   Cir. 2004)(holding that petitioner's misunderstanding of state's "rules, statutes, and the time

5   period set forth therein do not justify equitable tolling.").

6          In summary, federal review of Petitioner's claims that: he was denied his Sixth

7   Amendment right to counsel; the court lacked subject matter jurisdiction; he received

8   ineffective assistance of counsel; his Fourth Amendment rights were violated; Arizona's

9   appellate and post-conviction procedures are inadequate; and his guilty plea was involuntary

10  is procedurally barred. Petitioner has not established any basis to overcome the procedural

11  bar.

12  **V. Summary**

13         In accordance with the foregoing, Petitioner is not entitled to habeas corpus relief

14  because his claims are either procedurally barred from federal habeas corpus review or lack

15  merit.

16         Accordingly,

17         **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas

18  Corpus (docket # 1) and Supplemental Brief in Support of Petition for Writ of Habeas

19  Corpus (docket # 14) be **DENIED**.

20         This recommendation is not an order that is immediately appealable to the Ninth

21  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

22  Appellate Procedure, should not be filed until entry of the District Court's judgment. The

23  parties shall have ten days from the date of service of a copy of this recommendation within

24  which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules

25  72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within

26  which to file a response to the objections. Failure timely to file objections to the Magistrate

27  Judge's Report and Recommendation may result in the acceptance of the Report and

28  Recommendation by the District Court without further review. *See United States v. Reyna-*

1     *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual

2     determinations of the Magistrate Judge will be considered a waiver of a party's right to

3     appellate review of the findings of fact in an order or judgment entered pursuant to the

4     Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

5        DATED this 24th day of March, 2009.

6

7

8                  Lawrence O. Anderson
                 United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28